**Russell M. MORGAN, Appellant,**

v.

**Bert MELCHAR et al.**

**No. 18697.**

United States Court of Appeals,
Third Circuit.

Argued April 24, 1970.

Decided May 5, 1971.

As Amended June 30, 1971.

Rehearing Denied and Rehearing En
Banc Denied July 1, 1971.

Joseph Barry, Stavis, Richardson, Koenigsberg & Rossmoore, Newark, N. J., for appellant.

Morton Hollander, Chief Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellees.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiff-appellant, a registrant under the Selective Service Act of 1967, 50 App. U.S.C. §§ 451–467 (Supp. IV 1969), filed a verified complaint in the district court seeking relief in the nature of mandamus against the defendant members of Selective Service System Local Board No. 2 for New Jersey and such other relief as may seem just.[1] An application for a temporary restraining order was made on notice to the United States Attorney. No responsive pleadings were filed and, after hearing argument, the district court entered on March 3, 1970, an order denying the temporary restraining order and dismissing the complaint "for lack of federal jurisdiction."[2]

The complaint claims jurisdiction under 28 U.S.C. § 1331 (1964) (federal questions) and under 28 U.S.C. § 1361 (1964) (mandamus against a federal official). The district court dismissed because it considered Section 10(b) (3) of the Selective Service Act of 1967, 50 App. U.S.C. § 460(b) (3) (Supp. IV 1969), to be controlling.

Plaintiff's complaint alleged that in 1967, while he was married but living apart from his first wife and son, he was reclassified from Class III-A[3] to Class I-A.[4] He and his first wife wrote to the Local Board advising that she and their son were dependent upon him, and he was reclassified III-A. On February 4, 1969, plaintiff and his first wife were divorced and on May 4, 1969, he remarried (p. 23a). The complaint alleges that he continued to support his first wife and his

1. The complaint also sought an order that plaintiff be processed "for induction by means of random selection."

2. Later the same day the court denied a separate application for an order restraining defendants from inducting plaintiff pending appeal to this court.

3. "(a) In Class III-A shall be placed any registrant whose induction into the Armed Forces would result in extreme hardship (1) to his wife, divorced wife, child, par-

ent, grandparent, brother, or sister who is dependent upon him for support. * * *" 32 C.F.R. § 1622.30(a) (1970). This regulation was not affected by Exec.Order No. 11,527, 35 Fed.Reg. 6571 (1970).

4. "In Class I–A shall be placed every registrant who has failed to establish to the satisfaction of the local board, subject to appeal hereinafter provided, that he is eligible for classification in another class." 32 C.F.R. § 1622.10 (1970).

infant son and is their sole means of support.[5]

On June 11, 1969, the Local Board wrote to plaintiff requesting that he appear before it on June 18, 1969, to discuss his classification. Because he was in transit from New Jersey to Arizona he did not receive that letter until after June 23, 1969, when the Local Board mailed him a notice that he had been classified I-A (Exhibit A to Memorandum of Law In Opposition to Plaintiff's Order to Show Cause). On July 23, 1969, his letter appealing that classification to the New Jersey Appeal Board was received by the Local Board (Exhibit B to above Memorandum of Law).[6] On September 5, 1969, the Appeal Board concurred in the I-A classification of the Local Board and an induction order was mailed September 24, 1969, directing plaintiff to report for induction on October 8, 1969 (par. 8 of Complaint and Exhibit E to the above Memorandum of Law).

After the induction order issued, the plaintiff requested a personal appearance before the Local Board and submitted documentation, including affidavits of witnesses and medical history which the Local Board did not have before it at the time of its I-A classification. However, neither the complaint nor the letters and affidavits in the record state at any place that the plaintiff or his dependents developed any medical conditions after the notice of the induction order was mailed to plaintiff on September 24, 1969, or at any definite date prior thereto. The date for reporting for induction under the above order was postponed prior to October 8, 1969, and several times thereafter (pars. 21 & 22 of Complaint). By letter of January 5, 1970, the Local Board requested plaintiff "to appear for a meeting with [it] * * to discuss your case," but after this meeting of January 15, it wrote plaintiff on January 21, 1970:

"This will advise you the recent evidence submitted concerning your case has been reviewed by this local board but it does not justify the reopening of your case and reconsideration of your present classification.

"You will therefore be subject to further processing for induction. Notices will be mailed to you in due course."

Both plaintiff and his former wife requested an appeal from this letter of the Board. On January 27, 1970, the Execu-

---

5. Plaintiff has included in his appendix (P 18a) an affidavit of his first wife saying, "I am dependent upon him for three quarters of my support."

6. In this letter, showing an address in Wickenberg, Arizona, he first informed the Board that he had been divorced from his first wife and had remarried on May 4, 1969. 50 U.S.C.App. § 465(b) provides:

(b) It shall be the duty of every registrant to keep his local board informed as to his current address and changes in status as required by such rules and regulations as may be prescribed by the President.

32 C.F.R. § 1641.3 contains this language:

1641.3 Communication by Mail.—It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him.

Also, 32 C.F.R. § 1641.7 specifies:

1641.7 Reporting by Registrants of Their Current Status.—

(a) It shall be the duty of every classified registrant to keep his local board currently informed of his occupational, marital, family, dependency, and military status, * * * Every classified registrant shall, within 10 days after it occurs, report to his local board in writing every change in such status * * * and home address * * *

(b) A classified registrant shall submit to his local board in writing all information which the local board may at any time request from him concerning his occupational, marital, family, dependency, or military status. * * * The registrant shall submit such information to his local board within 10 days after the date on which the local board mails him a request therefor, or within such longer period as may be fixed by the local board.

tive Secretary of the Local Board wrote plaintiff as follows:

"This will acknowledge receipt of your letter requesting another appeal, this is not possible, you appealed when you received your 1-A classification and was forwarded to the Appeal Board returned still classified I-A. as of June 18th, 1969.

"You had a non-statutory hearing which was requested, you have no further rights, you will be subject to call at our next Induction which is overdue pending the hearing."

On February 19, 1970, plaintiff received a postponed date for induction, and this lawsuit followed. He alleges that the failure of the Selective Service System to afford him an appeal was erroneous as a matter of law, and that it should be corrected by mandamus.

Taking the above allegations as true, Judge Gibbons, by orders of March 3 and 6, 1970, and thereafter a panel of this court on March 16, 1970, granted temporary relief pending appeal, to consider the district court's adverse determination of jurisdiction in light of Bucher v. Selective Service System, 421 F.2d 24 (3d Cir. 1970), and of Hunt v. Local Board No. 197, 438 F.2d 1128, No. 18,076 (3d Cir. 1971), then still *sub judice*.

▉ The issue presented by this case is whether the district court was correct in holding that it lacked subject matter jurisdiction to entertain registrant's action for pre-induction judicial review. A

plaintiff has the burden of proving that a federal court, a court of limited jurisdiction, has subject matter jurisdiction, and there is a presumption that a federal court lacks jurisdiction in a particular case until it has been demonstrated that subject matter jurisdiction exists.[7] F.R. Civ.P. 12(h) (3) provides:

"Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." [Emphasis supplied.]

In view of these principles, this court has dismissed cases for lack of subject matter jurisdiction on its own motion on the basis of documents which were neither before the district court nor before this court. *See*, e. g., Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3d Cir. 1962).[8]

▉ The power resides in the Congress to define the jurisdiction of federal courts.[9] Congress has restricted the jurisdiction of federal courts over suits brought by registrants, prior to their induction, to challenge actions of the Selective Service System in section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3) (Supp. III, 1967), which provides in relevant part:

" * * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution

---

7. *See* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1935); Turner v. Bank of North America, 4 U.S. (4 Dall.) 8, 1 L.Ed. 718 (1799); Wade v. Rogala, 270 F.2d 280, 284 (3d Cir. 1959); C. Wright, Federal Courts § 7 (1970). The plaintiff has the burden of establishing subject matter jurisdiction and it was plaintiff's obligation to correct any deficiencies in the record on this point.

8. After the March 3 and 6 orders of Judge Gibbons, counsel filed Memoranda of Law attaching various documents from the Selective Service file which have not been challenged by either party. The documents attached by registrant have been treated by him as supplements to the rec-

ord and included in the appendix. The panel entering the order of March 16 apparently considered all such attached documents which are not in our court's file. F.R.A.P. 10(e) provides that the district court record may be supplemented in this court and this court has considered documents not before the district court in determining issues of subject matter jurisdiction. *See*, e. g., Berkowitz, v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3d Cir. 1962).

9. *See* Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868); Cary v. Curtis, 44 U.S. (3 How.) 236, 11 L.Ed. 576 (1845); C. Wright, Federal Courts, § 10 (1970).

* * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * * " [10]

## I.

■ In Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Court rejected a literal interpretation of section 10(b) (3) on the ground, suggested by the Solicitor General, that "such literalness does violence to the clear mandate" [11] of the section of the Act granting ministerial students exemption from training and service under the Act. *Oestereich* involved an attack on an administrative procedure challenged as being invalid on its face, in a context where "it was plain on the record and on the face of the Act that an exemption had been granted." [12] The registrant had had his statutorily mandated exemption taken away through delinquency proceedings because of conduct un-

related to the merits of continuing the exemption, and the Solicitor General had confessed that the use by the Selective Service System of delinquency proceedings for that purpose was error. Since a construction of the Act requiring the registrant to submit to induction before obtaining judicial review would have been unnecessarily harsh under the circumstances, the Court concluded that pre-induction review was not precluded in cases of that type.

The Court in *Oestereich* by way of statutory construction engrafted an exception on the literal terms of section 10(b) (3) in order to reconcile the clash between explicit statutory mandates. Observing that entitlement to the claimed exemption was "in no way contested" [13] by the government, the Court noted that "[w]e would have a somewhat different problem were the contest over, say, the quantum of evidence necessary to sustain a Board's classification." [14] This case does not involve a clearly mandated defer-

---

10. The following extracts from the Senate and House Committee Reports on the 1967 Act (P.L. 90–40) which added this language to the Selective Service Act make clear the intent of Congress:

 A. House Report No. 267, 90th Cong., 1st Sess. at 30–31 (1967), reprinted at 1967 U.S.Code Cong. & Ad.News p. 1333:

 The Committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant had exhausted his administrative remedies. Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such order. In view of this inclination of the courts *to prematurely inquire into the* classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard of this principle of the law by various courts could seriously affect the administration of the Selective Service System.

 B. Senate Report No. 209, 90th Cong., 1st Sess. at 10 (1967):

 Until recently, there was no problem in the observance of the finality provision. In several recent cases, however, district courts have been brought into selective service processing prematurely. The committee attaches much importance to the finality provisions and re-emphasizes the original intent that judicial review of classifications should not occur until after the registrant's administrative remedies have been exhausted and the registrant presents himself for induction.

Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), recognizes that if a registrant such as plaintiff accepts induction, he can immediately challenge the Selective Service determination by filing a petition for a writ of habeas corpus, so that registrant has two methods of judicial review available to him even if the district court order dismissing this action is affirmed.

11. 393 U.S. at 238, 89 S.Ct. at 417.

12. 393 U.S. 238 n. 7, 249, 89 S.Ct at 417.

13. 393 U.S. at 238, 89 S.Ct. 414.

14. 393 U.S. at 238 n. 7, 89 S.Ct. at 417.

ment [15] that has been taken away by improper means. Registrant claims that the local board should have given him a III-A deferment because of the extreme hardship [16] that would result to his divorced wife and child, as well as to his present wife, were he inducted. The right to this deferment, like the right to the conscientious objector exemption involved in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), is not an unconditional right, but rather is dependent on local board action which "inescapably involves a determination of fact and an exercise of judgment." [17] Here, there is no doubt that the local board had the authority to change registrant's classification,[18] and registrant does not challenge the legality of the procedure by which the change was effectuated. This situation is thus very similar to that in Clark v. Gabriel, where pre-induction review was held unavailable, the Court noting that:

> Here the Board has exercised its statutory discretion to pass on a particular request for classification, "evaluating evidence and \* \* \* determining whether a claimed exemption is deserved." Oestereich v. Selec-

tive Service Bd., *supra*, at 238, 89 S. Ct., at 416. A Local Board must make such a decision in respect of each of the many classification claims presented to it. To allow pre-induction judicial review of such determinations would be to permit precisely the kind of "litigious interruptions of procedures to provide necessary military manpower" (113 Cong.Rec. 15426 (report by Senator Russell on Conference Committee action)) which Congress sought to prevent when it enacted § 10(b) (3). 393 U.S. at 258–259, 89 S. Ct. at 426.

Thus we conclude that this complaint does not present a clash between clear mandates of the Act, and that further judicial erosion of the literalness of section 10(b) (3) is therefore unwarranted.

## II.

■■ The registrant alleges that the Local Board unlawfully refused to reopen his classification after he had received an induction order, and thereby unlawfully denied him the right to appeal that would follow a reopening.[19] The regulation governing reopening after

---

15. *See* Breen v. Selective Service Local Bd. No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

16. Since paragraphs 3, 5, 18 and 22 allege that registrant was living apart from his wife and child, and had divorced and remarried by May 1969, registrant would not be entitled to a III–A deferment based on fatherhood. The applicable fatherhood regulation, 32 C.F.R. § 1622.30 (c) provides:

 > In Class III–A shall be placed any registrant who prior to the effective date of this paragraph in its present form submitted to his local board information establishing his eligibility for deferment on the grounds of fatherhood under regulations in effect prior to such date, or who is so classified prior to such date, and who continues to maintain a bona fide family relationship in their home with his child or children, except that this paragraph shall not apply to any registrant who subsequently becomes a physician, dentist, or veterinarian.

 Registrant claims a III–A deferment based on "extreme hardship," which neces-

sarily involves more complex factual determinations. *See* note 3 *supra*.

17. 393 U.S. at 258, 89 S.Ct. at 426.

18. *See* 32 C.F.R. §§ 1625.1, 1625.2.

19. The registrant also urges that there was a de facto reopening of his classification after the induction order was issued, and that he was therefore unlawfully deprived of his right to appeal. Had there been a reopening, the registrant would have had a clear legal right to a personal appearance and an appeal; and this would be an entirely different case. 32 C.F.R. § 1625.13. The Local Board granted the registrant a "non-statutory hearing" to hear from him regarding his alleged change in status over which he had no control, which change was a prerequisite to reopening, concluded that he had not demonstrated such a change, and voted unanimously not to reopen his classification. The Supreme Court has recognized that a courtesy interview does not automatically amount to a reopening, Mulloy v. United States, 398 U.S. 410, 90 S.Ct.

receipt of an induction order provides in relevant part:

"1625.2 When Registrant's Classification May Be Reopened and Considered Anew.—The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * any person who claims to be a dependent of the registrant * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

*See* Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (opinion of 1971).

While it is not clear that a regulation promulgated by the President, on a subject not even mentioned in the Act, can so conflict with the Congressional mandate in section 10(b) (3) as to require a construction of section 10(b) (3) that would permit pre-induction judicial review, the Court of Appeals for the District of Columbia Circuit has so held in Shea v. Mitchell, 137 U.S.App.D.C. 227, 421 F.2d 1162 (1970). Assuming, without deciding, that this court would accept the reasoning of *Shea*,[20] a different result is not called for in this case. Unlike the statutorily mandated exemption in *Oestereich,* and the statutorily mandated deferment in Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), *reopening after an induction order has been mailed is not a clear legal right.* To the contrary, this court's decision in Clark v. Volatile, 427 F.2d 7 (3d Cir. 1970), emphasizes that, in view of 32 C.F.R. § 1625.2, reopening after an induction order has been mailed is not required, indeed, is not permissible, until the Local Board specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.[21] We do not believe that the

---

1766, 26 L.Ed.2d 362 (1970), and, on this record, we conclude that there was no reopening (as well as no basis for reopening since no date after 9/24/69 is given for the onset of the alleged dependency circumstances) in this case. *See* note 23 *infra.* Unlike the preinduction order request for reopening, where presentation of a prima facie case generally requires the board to reopen, the board in this case was required to make an initial factual determination before it could reopen. *Compare* Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), *and* 32 C.F.R. § 1625.2 with Clark v. Volatile, 427 F.2d 7 (3d Cir. 1970), *and* the proviso to 32 C.F.R. § 1625.2. Under these circumstances, giving the registrant an opportunity to present fully information relevant to the finding that must precede reopening does not amount to a de facto reopening.

Furthermore, registrant has not alleged in his complaint, nor does the record show, any specific cancellation of the September induction order. On the contrary, paragraph 22 of the complaint states that the induction order "was postponed successive times until the present pending order for March 4, 1970." 32 C.F.R. § 1632.2(d) provides:

A postponement of induction shall not render invalid the Order to Report for Induction * * * which has been issued to the registrant but shall operate only to postpone the reporting date and the registrant shall report on the new date without having issued to him a new Order to Report for Induction * * *.

20. Three judges of this court cited *Shea* with approval in this court's en banc decision in Hunt v. Local Board No. 197, 438 F.2d 1128, No. 18,076 (3d Cir., filed Feb. 5, 1971) (Freedman, J., concurring).

21. *See also* Crosby v. Selective Service System, 431 F.2d 1336 (3d Cir. 1970). In *Clark, supra,* this court stated at 427 F.2d at 10:

Petitioner argues that upon a *prima facie* showing that his change in status resulted from circumstances beyond his control the board was required to reopen. Under petitioner's theory we

right to reopening after an induction order has been mailed, the existence of which is contingent upon the resolution of factual issues by the Local Board, presents such a clash with Section 10(b) (3) as to require a construction of Section 10(b) (3) that would permit pre-induction review on this record.[22] Rather, this record[23] presents a situation similar to that in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), where the Court held that Section 10(b) (3) barred pre-induction review. Like the registrant in *Gabriel,* this registrant was not "unconditionally" entitled to have his classification reopened. And, as in *Gabriel,* "there is no doubt of the Board's statutory authority to take action which [the registrant] challenges, and that action inescapably involves a determination of fact and an exercise of judgment." *See also* Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969). This conclusion is consistent with the observation of this court in Bucher v. Selective Service System, 421 F.2d 24 (3d Cir. 1970), that "[section 10(b) (3)] bars judicial review only where there is a challenge to the System's resolution of factual questions in the classification or processing of a draft registrant." 421 F.2d at 27. Three other circuits have indicated their adoption of the result we reach here. Edwards v. Selective Service Local Board No. 111, 432 F.2d 287 (5th Cir. 1970); Bookout v. Thomas, 430 F.2d 1343 (9th Cir. 1970); Evans v. Local Board No. 73, 425 F.2d 323 (10th Cir. 1970); Sloan v. Local Board No. 1, 414 F.2d 125 (10th Cir. 1969).

Because the registrant in Hunt v. Local Board No. 197, 438 F.2d 1128, No. 18,076 (3d Cir., filed Feb. 5, 1971), had not received an induction order when he requested reclassification from the local board on the basis of changed conditions, the holding in *Hunt* is inapplicable to the facts presented by this record. Also, in *Hunt,* as in *Oestereich,* the parties conceded that the registrant was entitled to a classification that would render him

---

would apparently determine de novo whether a prima facie showing had been made, as we would in a pre-induction-order case. * * * Petitioner's interpretation would seem to be negated by the language of the provisio that requires the board to "specifically find" a change beyond the registrant's control before it can reopen; we can hardly hold that a board must reopen after only a prima facie showing of no control, when the regulation clearly requires that the board *specifically find* no control before it can reopen.

It is noted that the record presents no basis for a finding that "there has been a change in [plaintiff's] status resulting from circumstances over which the registrant had no control," since the complaint alleges that his first wife and son have been dependent upon him since 1967 (par. 17) and his second wife has been dependent upon him since his remarriage in May 1969 (pars. 5 and 18 and p. 23a). As noted above at p. 4, the allegations concerning the medical conditions of the registrant and his dependents do not state that they arose after September 24, or even June 18, 1969. *See* note 23 *infra.*

22. The reopening regulation (32 C.F.R. § 1625.2) undoubtedly has the force of law, and the registrant will be able to get judicial review, after his induction or refusal to be inducted, of his claims based on violations of the regulations. *See* Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Oestereich v. United States, 393 U.S. 233, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

23. The complaint probably should be read as establishing conclusively that registrant was *not* entitled to have his classification reopened after he received the induction order. Paragraph 18 of the complaint alleges that "[t]he *only* change in circumstances affecting plaintiff's status is that he is now remarried and has an additional obligation of support to his present wife." That change in circumstances occurred in May 1969 (paragraph 5), and the induction order did not issue until September 1969 (paragraph 8). Since we conclude that pre-induction judicial review is not available when a local board, after an induction order has issued, considers evidence and decides that the evidence does not warrant reopening, we have not so treated the complaint. We reiterate the fact that the plaintiff has the burden of establishing that federal subject matter jurisdiction exists. *See* note 7 *supra.*

ineligible for induction, and there is no such concession in this case.

## III.

■ The order to report for induction was mailed September 24, 1969. The registrant does not allege that it was ever specifically cancelled by the Local Board, but instead alleges that he was granted several postponements of the date to report for induction. The date on which the registrant was finally ordered to report for induction was March 4, 1970. The new random selection method of determining the order of selection of registrants became effective on December 1, 1969. The registrant seeks pre-induction review of his claim that the Local Board unlawfully refused to accord him the random selection procedure.

Assuming, without deciding, that Section 10(b)(3) does not bar pre-induction judicial review in cases where there is a conflict between that section and rights to procedures mandated by regulations or executive orders, this record does not establish that the regulation [24] and executive order [25] creating the random selection method conferred rights to the random selection procedure on the registrant. We have examined the contention of the registrant regarding his entitlement to the random selection method and find it without merit.[26]

## IV.

Under the principles stated above, registrant is entitled to have judicial review

24. 32 C.F.R. § 1631.5(d).

25. Proclamation 3945, Nov. 26, 1969, 34 Fed.Reg. 19017 (Nov. 29, 1969).

26. The regulations make clear that a postponement of the induction operates only to postpone the reporting date. See United States ex rel. Luster v. McBee, 422 F.2d 562, 569–570 (7th Cir. 1970); 32 C.F.R. § 1632.2(d). The induction order of September 24, 1969, remained outstanding and the random selection method only applied to induction orders issued on or after December 1, 1969. See Gutknecht

of the merits of his claim to a III-A deferment, as well as of any denial of procedural fairness by the administrative authorities, after induction or refusal to be inducted by a petition for a writ of habeas corpus or entry of a not guilty plea in a criminal action. See note 10. Furthermore, registrant may apply to the State Director of Selective Service or the Director of Selective Service for a reopening as provided in 32 C.F.R. § 1625.3(a).

Accordingly, the March 3, 1970, order of the district court dismissing the complaint for lack of jurisdiction over the subject matter will be affirmed.

GIBBONS, Circuit Judge (dissenting).

The analysis of Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968) set forth in Judge Van Dusen's opinion was tacitly rejected by a majority of this court in Hunt v. Local Board No. 197, 438 F.2d 1128, No. 18,076 (3 Cir. 1971). In that case a majority of the court could not agree on an opinion. But as the next to last sentence in Judge Freedman's plurality opinion makes clear, he intended no more than to decide the case on a narrower ground presented by virtue of an agreement by the parties, at the bar of this court, as to certain facts. I objected in Hunt to the practice of deciding an appeal on a record not considered by the district court. I believed that the case could not be decided on the narrower ground selected by Judge

v. United States, 396 U.S. 295, 306, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); Crosby v. Selective Service System, 315 F.Supp. 228 (W.D.Pa., filed July 17, 1970), aff'd 431 F.2d 1336 (3d Cir. 1970). This would be a different case if the Local Board had cancelled the induction order of September 24, 1969, by reopening the registrant's classification. See 32 C.F.R. § 1625.14. But, as we noted in note 19 supra, this record indicates that the registrant's classification was not reopened subsequent to the issuance of the induction order on September 24, 1969.

Freedman and the judges who concurred in his opinion. The actual disposition of the *Hunt* case ordered by a majority of the court is consistent with the views expressed in the opinions filed by Judge Hastie and by me. I do not claim that either his opinion or mine is a binding precedent for this case. I do, however, continue to adhere to the interpretation of Section 10(b) (3) of the Selective Service Act which I set forth in that opinion.

As authority for the proposition that an appellate court can decide an appeal on a record other than that which was before the district court Judge Van Dusen cites Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3 Cir. 1962). That case is hardly authority for the action taken here. In *Berkowitz* the court took judicial notice of the record of the Orphans' Court of Delaware County, Pennsylvania which raised a question whether the plaintiff in a negligence suit was a guardian ad litem rather than a general guardian. If the latter, and if the guardian plaintiff was a New Jersey resident, there would have been federal diversity jurisdictions. If the former, there would be no diversity. This court did not, as the majority proposes to do, decide the case on matters outside the record. It remanded to the district court for a determination of the facts.

The procedure adopted by the majority here offends due process, for the appellant had every right to assume that this court would review the decision actually made below on a Rule 12(b) motion rather than exercise original jurisdiction on a different record. Rule 10(e), Fed.R. App.P., far from sanctioning what has been done here seems to me, rather, to prohibit it. It contemplates correction of omissions in the record, and the record, as defined in Fed.R.App.P. 10(a) comprises only matters considered by the district court. It is true, as Judge Van Dusen points out, that counsel for appellant attached to his motion for an injunction pending appeal certain exhibits from the Selective Service file. These,

however, were never claimed to present a complete picture. The plaintiff was denied a hearing under Rule 65, Red.R.Civ. P., in the district court on jurisdictional grounds. On his motion under Rule 8(a), Fed.R.App.P., he brought before this court some of the evidence which should have been received in the Rule 65 hearing. That course was proper since in applying for an injunction pending appeal appellant must " * * * show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements or copies thereof." Rule 8(a), Fed.R.App.P. But the limited record contemplated by the rule governing applications for injunctions pending appeal is not intended to be a substitute for the district court record. The use to which these exhibits have been put by the majority is fundamentally unfair to the litigant, who might have included other exhibits had he known we proposed to exercise original rather than appellate jurisdiction.

The complaint claims jurisdiction under 28 U.S.C. § 1331 (1964) (federal questions) and under 28 U.S.C. § 1361 (1964) (mandamus against a federal official). The district court dismissed pursuant to Rule 12(b) (1), Fed.R.Civ.P., because it considered Section 10(b) (3) of the Selective Service Act of 1967, 50 U.S.C.App. § 460(b) (3) (Supp. IV 1969) to deprive it of subject matter jurisdiction. To decide this appeal we should be confined to the pleading on which the district court acted. It alleges that plaintiff, separated from, but supporting a wife and child, not only was entitled to a III-A hardship classification, but actually had such a classification until the Local Board's *ex parte* reclassification of June 18, 1969. It alleges that the request for reclassification brought before the Local Board the additional facts of his remarriage, his continued sole support of his former wife and son, and the present medical conditions of two dependents. Certainly

these allegations, if true, prima facie establish facts in addition to those considered when the registrant was classified, and which entitle him to a hardship deferment.

In this case, unlike *Hunt*, the Local Board did afford the applicant a personal appearance. Plaintiff-appellant contends that this was an actual reopening pursuant to 32 C.F.R. § 1625.11 (1970), and that such reopening brought into operation 32 C.F.R. § 1625.13 (1970) which provides:

> "Each such classification shall be followed by the same right of appearance before the local board and the same right of appeal as in the case of an original classification."

Respondent contends that the personal appearance was a "non-statutory hearing" and a matter of pure grace. In either event plaintiff was at least foreclosed from the right of administrative appeal which is mandated by the governing statute. If the personal appearance was a hearing upon reopening it was "subject to the right of appeal to the appeal boards herein authorized." 50 U.S. C.App. § 460(b) (3) (Supp. IV 1969). If it was not a hearing upon reopening it was, additionally, a denial of procedural due process. Hunt v. Local Board No. 197, *supra,* and cases therein cited.

· Another difference between this case and *Hunt* is the time when the facts on which the applicant relies were called to the attention of the Local Board. The plaintiff in *Hunt* alleged that he gave the board notice of changed circumstances after classification but before receipt of an induction order. Here plaintiff's application for reclassification took place after the issuance, in September, 1969, of an order to report for induction (SSS Form No. 252) but before the issuance of a different notice to report for induction on or about February 19, 1970. The Local Board's letter of January 21, 1970, states that plaintiff will be subject to further processing for induction. This indicates that the September order to re-

port for induction was cancelled or postponed, but there is nothing in the record before us which discloses how or why that was done. Judge Van Dusen states that the September 24, 1969 order to report for induction was never specifically cancelled by the Local Board. The complaint does not so allege, and the source of the facts on which he bases this conclusion is not disclosed.

A registrant who has received an order to report for induction bears a heavier burden in obtaining reopening and reclassification than does an applicant who has not yet been ordered up. Not only must he present "written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification," 32 C.F.R. § 1625.2 (1970), but he must convince the Local Board that "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2 (1970). Thus the prima facie showing, after any induction order issues, requires three elements:

1. information not considered by the board when it made the classification;
2. information which would justify a change in classification;
3. change in circumstances over which the registrant had no control.

If these three requirements are met the board must reopen and afford new appearance and appeal rights "as in the case of an original classification." 32 C.F.R. § 1625.13 (1970). United States ex rel. Vaccarino v. Officer Of Day, 305 F.Supp. 732 (S.D.N.Y.1969). In the case of an original classification, and hence in the case of a reopening and reconsideration, there is an *automatic stay* of an induction order pending an appearance before a Local Board, 32 C.F.R. § 1624.3 (1970), and pending administrative appeal, 32 C.F.R. § 1626.41 (1970).

As pointed out hereinabove, the present record does not disclose how or why

the September order for induction was cancelled or postponed. Induction was postponed, however, and this fact considered with the regulations on reopening, and automatic stay of induction orders, lends substance to plaintiff's contention that the Local Board actually reopened his classification. No regulations other than those referred to provide for stay of an order for induction, and those referred to would come into operation in plaintiff's situation only if 32 C.F.R. § 1625.13 (1970) came into operation.

In any event, an application for reconsideration made after an order for induction is treated, procedurally, in the same manner as one made before such an order. Substantively, however, the applicant must make the additional showing of change in circumstances beyond his control. Thus, if we assume the September induction order remained in effect, the only difference between this case and *Hunt* is the necessity for such an allegation.

Reading the complaint with the liberality required when reviewing an order dismissing for want of jurisdiction, it sufficiently alleges all three required elements. It alleges that plaintiff gave the board notice of remarriage, of continued support of the first wife and child, and of health conditions about which it had no prior information. Certainly the illness of the registrant's wife and former wife were circumstances over which he had no control. The complaint could, perhaps, have been more specific about the nature and seriousness of these illnesses, but on a motion to dismiss it was clearly sufficient.

The majority rely, in affirming the dismissal, on the fact that the illnesses began prior to the September induction order. Conceding that the registrant has no control over the health of his wife or former wife, the majority say that the complaint fails to allege that their health changed for the worse after receipt of the September induction order. If they were ill both before and after the receipt of the order the registrant would not be entitled to reopening. If they became ill after receipt of the order reopening would be required.

To put in context the gross unfairness of such a distinction consider these allegations, which as the case is presented here must be accepted as true. The registrant on September 13, 1967, was classified III-A. On June 11, 1969, the Local Board requested him to appear for a personal appearance on June 18, 1969. Because he was in transit from New Jersey to Arizona when the June 11, 1969 letter was mailed he did not receive it until after June 18, 1969. The Local Board ex parte reclassified him I-A. Without the benefit of a personal appearance or opportunity to submit documentation in support of his request for a III-A classification, he appealed this reclassification. On September 8, 1969, his appeal was denied and on September 24, 1969, the induction order issued. After the September induction order issued, and with legal advice for the first time, he submitted new information which the Local Board considered at a personal appearance. When, following this personal appearance, he was continued in class I-A he attempted to appeal again, but was told that he had no further rights and would be subject to call at the next induction.

If the Local Board had rescheduled a personal appearance rather than *ex parte* reclassifying from III-A to I-A, the health circumstances would have been called to the board's attention before the issuance of the September induction order, and the distinction relied upon by the majority would have been unavailable. I cannot imagine that 32 C.F.R. § 1625.2 was intended to produce so patently arbitrary a result. The registrant was in circumstances entitling him to a hardship deferment before the Local Board reclassified him I-A. Now, say the majority, the fact that the hardship antedated the resulting induction order is the reason for refusing to reopen.

Assuming that the induction order which triggered applicability of the

"change in circumstances beyond his control" requirement was the September order, I would hold that any illness not previously called to the attention of the Local Board was a change in circumstances beyond the registrant's control for purposes of 32 C.F.R. § 1625.2. On this record, however, such a decision may not even be proper, since the applicable induction order for purposes of § 1625.2 may be the February, 1970, order. In that event the "beyond his control" requirement would not be applicable.

The difficulty as to the applicable order for purposes of § 1625.2 underscores the impropriety of appellate courts deciding appeals on procedural bases different from those of the district court. The district court obviously took a much narrower view of its jurisdiction than did any of the judges who comprised the majority in Hunt v. Local Board No. 197, *supra*. Indeed its interpretation of § 10 (b) (3) was narrower than that of the majority in this case. It dismissed not because it found that the Local Board acted properly but because it thought there was no jurisdiction to hear the matter. The majority affirms because the Local Board acted properly in refusing to reopen, on a record which does not even contain the complete Selective Service file.

I also take issue with the majority holding in Part III of the opinion, "We have examined the contention of the registrant regarding his entitlement to the random selection method and find it without merit." The district court never considered this issue, and if, as in the other parts of the opinion it so strenuously urged, we lack jurisdiction, why should that issue be reached and decided on appeal? The approach on jurisdiction seems to be "heads the Selective Service System wins, tails the registrant loses."

I would reverse and remand to the district court for a hearing.