Fred LAWTON, Appellant,

v.

Curtis W. TARR et al., Appellees.

No. 71–1507.

United States Court of Appeals,
Fourth Circuit.

Argued June 11, 1971.

Decided July 12, 1971.

788

Barry Nakell, Chapel Hill, N. C., and Thomas F. Loflin, III, Durham, N. C. (Spaulding & Loflin, Durham, N. C., on brief), for appellant.

Richard J. Bryan, Asst. U. S. Atty. for Eastern Dist. of N. C. (Warren H. Coolidge, U. S. Atty., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BOREMAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Fred Lawton, asserting that his induction into the army was illegal, appeals from the denial of a writ of habeas corpus. Because we find no infirmity in the procedures that led to Lawton's induction, we affirm.

Lawton was classified I-A on November 9, 1970. His random sequence number was reached by his local board in 1970, but insufficient time remained in the calendar year to induct him. Accordingly, in the middle of December, the board notified him that effective January 1, 1971, he would be in the Extended Priority Selection Group. Lawton contends that as a member of this group, he should have been inducted during the first quarter of the year and that on April 1, 1971 he was entitled to assignment to a lower priority group. The government asserts that issuance of Lawton's induction order on April 5 and his induction on April 21, 1971 complied with the regulations pertaining to the Extended Priority Selection Group.

On November 26, 1969, the President, by Executive Order, amended Selective Service Regulations to provide for the induction of registrants by lottery.[1] As aptly described in the Senate Report on the Selective Service Amendment Act of 1969: "The purpose of the system is to establish for the age group 19 to 20, and those older if in a deferred category, 1 year of maximum exposure for prime vulnerability for induction. After the 1 year those not inducted would be placed in a lower order for call."[2] To implement selection by lottery the regulations established a First Priority Selection Group, which includes all registrants who are subject to maximum vulnerability for induction during a given calendar year.[3] The regulations define the Extended Priority Selection Group as those members of the First Priority Selection Group whose random sequence numbers had been reached during the year but who had not been issued orders to report for induction.[4] Registrants exposed to induction, but not actually inducted during the period of their maximum exposure are assigned to a series of lower priority groups, which are annually reduced one step further in priority.[5] The regulations were also amended to provide for the following order of call: (1) volunteers; (2) Extended Priority Selection Group; (3) First Priority Selection Group; (4) lower priority selection groups.

Since Lawton was placed in the Extended Priority Selection Group, his exposure to induction is governed by 32 C.F.R. § 1631.7(d) (5)[6]:

"Members of the Extended Priority Selection Group who have not been issued orders to report for induction and originally scheduled for a date prior to April 1 shall forthwith be as-

1. Executive Order No. 11,497, 3 C.F.R. 210 (1969 Comp.). The regulations were further amended on September 26, 1970 by Executive Order No. 11,563, 3 C.F.R. 174 (1970 Comp.).

2. S.Rep.No. 91–531, 91st Cong., 1st Sess., 1969 U.S.Code Cong. & Admin.News, pp. 1318, 1319.

3. 32 C.F.R. 1631.7(c) (2).

4. 32 C.F.R. § 1631.7(c) (1).

5. 32 C.F.R. § 1631.7(c) (3), (d) (2) and (3).

6. See also Local Board Memo. No. 99, Part III, SSLR 2200:8.

signed to the lower priority selection group to which they would have been assigned had they never been assigned to the Extended Priority Selection Group; except that members of the Extended Priority Selection Group who would have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction physical examination, reconsideration, judicial proceeding, or inability of the local board to act."

Lawton claims that in accordance with the first clause of this regulation he should have been inducted, if at all, prior to April 1, 1971. In support of his position, he draws an analogy to United States v. Stevens, 438 F.2d 628 (9th Cir. 1971), where a nine-month delay in induction for a security check after the registrant was ordered to report effected a cancellation of the induction order. The analogy to *Stevens*, however, is imperfect because its decision rested on 32 C.F.R. § 1632.2,[7] which the court interpreted as prohibiting a local board from postponing induction for more than 120 days from the date of the order to report. Here, in contrast, the April 1 cutoff provided in § 1631.7(d) (5) does not have the finality of the 120 day period found in § 1632.2. Section 1631.7(d) (5) expressly allows induction after April 1 and no specific limitation is placed on the issuance of the order. Instead

boards are required to order induction "as soon as practicable."

The government contends that Lawton was properly inducted under the second clause of § 1631.7(d) (5), which authorizes the induction after April 1 of members of the Extended Priority Selection Group where orders for an earlier induction could not be issued. Lawton replies that this provision is not applicable to him because he did nothing to delay or impede his induction. He says, moreover, that the local board was not precluded from acting for reasons beyond the government's control, such as resignation of its members or vandalism of its files. The record supports Lawton's assertion that he fully cooperated with his local board and that he instituted no administrative or judicial proceedings that delayed his induction. The government concedes as much, and it attributes the delay in this case to the "inability of the local board to act."

■ We believe the phrase "inability of the local board to act" should not be restricted to the extraordinary situations that Lawton suggests. The regulation employs the phrase, along with others, to illustrate the circumstances, some unspecified, which will justify induction after April 1. When a member of the Extended Priority Selection Group has not been inducted during the first quarter of the year because of the "inability of the local board to act," we interpret § 1631.7 to allow induction after April 1 if (a) the local board and the armed forces have proceeded with reasonable dispatch to comply with regulations governing the selection, examination, and induction of registrants, and (b) the registrant was inducted as soon as practicable. The facts, we believe,

---

7.  32 C.F.R. § 1632.2 states in part:
    "(a) In case of death of a member of the registrant's immediate family, extreme emergency involving a member of the registrant's immediate family, serious illness of the registrant, or other extreme emergency beyond the registrant's control, the local board may after the Order to Report for In-

duction (SSS Form No. 252) has been issued, postpone the time when such registrant shall so report for a period not to exceed 60 days from the date of such postponement, subject, however, in cases of imperative necessity, to one further postponement for a period not to exceed 60 days * * *."

show that these conditions were satisfied.

■ On January 12, 1971, Lawton was ordered to report for a physical examination to be held on January 27, 1971. The scheduling of his physical examination, Lawton contends, delayed his induction in violation of a specific directive from Selective Service National Headquarters. He refers to a letter of March 5, 1970 written by the Acting Director to all State Directors instructing them to expedite physical examinations for all I-A registrants with random numbers 1 through 215 and all deferred registrants within the same numerical range who were likely to be removed from their current status in the next six months. Lawton's random sequence number was 159, and until his reclassification on November 9 he had a II-S deferment. He was not, however, among the deferred class of registrants mentioned in the directive. The record does not disclose that his deferment was likely to be removed during the six-month period specified by the Acting National Director, and he was not reclassified until after the expiration of the period. The board, therefore, did not violate the directive by failing to order his physical examination while he was in a deferred status.

Moreover, the board acted promptly after Lawton was reclassified. On October 16, 1970, the board had received its armed forces physical examination call for November. The November call was filled by registrants who became eligible for physical examinations before Lawton was reclassified. Lawton was not examined in December because the board received no call for physical examinations then. For these reasons it is apparent that the board was not dilatory in scheduling Lawton's examination in January. But aside from the reasonableness of the delay, it is of decisive importance that the January examination would not have prevented Lawton's induction in March had it not been for another cause of delay which we will presently discuss. We hold, therefore, that the board did not violate any regulation or directive in ordering Lawton to be examined on January 27, and the scheduling of the examination is not a bar to his induction.

■ Lawton also complains that his induction was impermissibly delayed by a needless security check. On January 27, when Lawton appeared for his physical examination in Raleigh, North Carolina, he qualified his security questionnaire and statement of personal history by noting that he had attended meetings and associated with members of the Ku Klux Klan, Students for a Democratic Society, and the Southern Student Organizing Committee. On February 3, the Commanding Officer of the Armed Forces Examining and Entrance Station in Raleigh noted that Lawton was mentally, morally, and physically qualified for military service, but because the Ku Klux Klan is on the Attorney General's list of organizations that pose a threat to national security, he sent Lawton's papers to the Army Recruiting Command in Hampton, Virginia, for a security check. The same day he notified the board of Lawton's status: "Acceptability for induction held in abeyance, not presently acceptable for induction."

On February 12, the security officer of the Recruiting Command wrote the Commanding Officer of the Examining Station that Lawton was acceptable for induction. The local board received notice of Lawton's acceptability on February 24 and immediately notified him. The entire process, from the time Lawton completed his security questionnaire and personal history until he was notified of acceptability, took less than 30 days. The district court found no undue delay in these proceedings, and the record contains no evidence to establish that this finding is erroneous.

Because a local board must notify a registrant of his acceptability 21 days before induction, 32 C.F.R. § 1631.7(a), Lawton could not be included in the March draft call, which was scheduled for March 11. Therefore, he was assigned to the next month's call, and on

April 5 he was ordered to report on April 21.

■ Lawton concedes that he qualified his security questionnaire and personal history, but, as he correctly points out, he did not acknowledge membership in an organization on the Attorney General's list. He contends, therefore, that he was available for induction when the army found him mentally, morally, and physically fit on February 3. He relies on Army Regulation 604–10 § 3–3a, which provides that a registrant who qualifies his security questionnaire or personal history statement is eligible for induction if he does not acknowledge that he is a member of an organization on the Attorney General's list or that he is a Communist. The difficulty with Lawton's position is that § 3–3a must be read with other regulations that provide for a security check when a registrant qualifies his security questionnaire or personal history even though he has not acknowledged membership in a listed organization.[8] Personnel at the Examining and Entrance Station are not au-thorized to make this check. They must send a request for the check to the Army Recruiting Command in Hampton, Virginia.[9] When the Recruiting Command advises the Examining and Entrance Station that the registrant has been cleared for induction, the Station is directed to notify the local board that the registrant is acceptable.[10] Until Lawton's local board received notice that he was acceptable, it was powerless to issue his order to report for induction. 32 C.F.R. 1631.7(a). This we hold was an instance of the "inability of the local board to act" within the meaning of 32 C.F.R. § 1631.7(d) (5).

The local board and the armed forces acted with reasonable dispatch and Lawton was ordered to report for induction as soon as practicable.[11] We conclude, therefore, that the regulations pertaining to the induction of members of the Extended Priority Selection Group were not violated. Lawton's induction was lawful and the district judge properly denied the writ.[12]

Affirmed.

8. AR. 601–270 § 5–6b(2) provides that registrants qualifying personal history statements or security questionnaires without acknowledging membership in an organization on the Attorney General's list "will be processed in accordance with · instructions issued by the Commanding General. U. S. Army Recruiting Command."

USAREC Reg. 604–1 § 5b(1) states that induction or enlistment of a registrant who qualifies his security questionnaire or personal history "will be held in abeyance pending completion of investigative action."

Although the registrant is technically available for induction when the qualification he has noted on his security questionnaire or personal history is not of security significance, the Commanding Officer of the Examining and Entrance Station is not authorized to certify his acceptability without prior concurrence from the Recruiting Command. USA REC Reg. 604–1 § 6b.

9. AR. 604–10 §§ 3–3b and h; USAREC Reg. 604–1 §§ 5b and 6.

10. AR. 601–270 § 5–6b(9); USAREC Reg. 604–1 § 6d.

11. We emphasize that the board's inability to act delayed Lawton's induction only three weeks. Our opinion should not be read to countenance lengthy delays when the government relies on this exception, but in this appeal we have no occasion to rule on the outside limits of delay. Of course, different factors must be considered when the registrant himself delays induction.

12. This action was commenced while Lawton was in North Carolina, but he was transferred to South Carolina before the Commanding Officer of the Examining and Entrance Station was served. The government, though disclaiming a desire to have the case dismissed for lack of jurisdiction, has called our attention to this problem. Lacking adversaries, we find no occasion to consider this issue, for had we decided that Lawton was entitled to a writ we could have proceeded under our original jurisdiction. 28 U.S.C. § 2241.