458 F.2d 1281
 Bryan I. LEVINE, Plaintiff-Appellant,
v.
SELECTIVE SERVICE LOCAL BOARD NO. 18, STAMFORD, CONNECTICUT
and Frederick Palomba, Individually and as
Director of the Selective Service for
Connecticut, Defendants-Appellees.
 No. 323, Docket 71-1885.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 6, 1972.
Decided April 14, 1972.
 
 Emanuel Margolis, Stamford, Conn., for plaintiff-appellant.
 Peter A. Clark, Asst. U. S. Atty., New Haven, Conn. (Stewart H. Jones, U. S. Atty., D. Conn., New Haven, Conn.), for defendants-appellees.
 Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.
 MOORE, Circuit Judge.
 
 
 1
 Bryan I. Levine appeals from an order of the District Court of Connecticut granting the government's motion to dismiss his complaint for declaratory and injunctive relief, a writ of mandamus, and damages against his draft board and the state director of selective service.[1] The court below dismissed Levine's complaint on the basis of section 10(b) (3) of the Military Selective Service Act (Act).[2] We reverse the judgment of dismissal and remand for an evidentiary hearing to determine (1) how Levine's local board voted on February 23, 1971 in response to Levine's request for a reopening and a reclassification, and (2) why the board delayed issuance of Levine's induction order until April 26, 1971.
 
 I. The Procedural Posture of the Case
 
 2
 The difficulty in resolving the legal issues in this case stems from the posture of the case before us. By a complaint dated May 10, 1971 Levine alleged the following. Having had a student deferment, he was reclassified by his board into Class I-A on or about July 15, 1969. Levine did not request a personal appearance to contest this classification and did not appeal. He took his physical examination in August of 1969 and received his notice of medical acceptability (Form DD 62) in November.
 
 
 3
 In December of 1969 Levine wrote a letter to the board requesting a reopening and reclassification of his draft status to Class II-A. The basis of this request was Levine's belief that a job he was to begin in January of 1970 entitled him to an occupational deferment. From January of 1970 until at least the date of the complaint, Levine worked as a research assistant in the Microbiology Department at the University of Connecticut. His request for reclassification was supported by letters from two professors in the Department.
 
 
 4
 One year later, in December of 1970, the board notified Levine that his Class I-A status remained unchanged. By separate letter the board advised him that it did not believe that a personal appearance was necessary in order for it to make its decision on his request; however, in view of Levine's request for an appearance, it would call him for a hearing in the near future.
 
 
 5
 By letter dated February 10, 1971 the board scheduled a hearing for February 23d. During this hearing Levine alleges that he was informed by the Executive Secretary of the board that if he did not receive an order to report for induction by the end of March, he would no longer be subject to the draft as a member of the Extended Priority Selection Group,[3] members of which are subject to call for induction after volunteers.[4] Levine is a member of the Extended Priority Selection Group because his lottery number (127) was reached in 1970 but he did not receive an order to report for induction.[5]
 
 
 6
 On March 1, 1971 the board issued to Levine a Notice of Classification (SSS Form 110), continuing his status in Class I-A. On April 26, 1971 the board issued Form 252 to Levine ordering him to report for induction on May 13, 1971.
 
 
 7
 The government did not answer Levine's complaint. Instead, it moved to dismiss on the grounds that the district court lacked subject matter jurisdiction over the action, and that Levine had failed to exhaust his adminstrative remedies.
 
 
 8
 After hearing oral argument on the government's motion to dismiss and receiving memoranda from the parties, Judge Zampano granted the government's motion on July 26, 1971. Besides Levine's complaint and the government's motion to dismiss, all that Judge Zampano had before him to determine the factual basis for Levine's complaint were an affidavit by Levine swearing to the accuracy of the matters alleged in the complaint and two letters sent by the board to him submitted as exhibits.[6] No local board officials testified as to what occurred on February 23d, nor were any affidavits of such officials introduced by the government in support of, or by Levine in opposition to, the motion to dismiss.
 
 
 9
 II. The Applicability of 10(b) (3) to Levine's Complaint
 
 
 10
 The basis of Levine's argument that section 10(b) (3) does not bar his complaint is that the April 26th induction order was issued in violation of the Selective Service System's own regulations. Section 1631.7(d) (5) of these regulations provides that members of the Extended Priority Selection Group who have not been issued orders to report for induction and scheduled to report prior to April 1st shall be assigned to a lower priority selection group.[7] Because the board clearly issued his order for induction beyond April 1st, Levine thus claims its issuance is blatantly lawless.[8]
 
 
 11
 There is a proviso to section 1631.7(d) (5), which provides:
 
 
 12
 . . . members of the Extended Priority Selection Group who would have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction physical examination, reconsideration, judicial proceeding, or inability of the local board to act.
 
 
 13
 The government argues that while Levine's induction order was issued beyond April 1st, it was nevertheless issued "as soon as practicable". The basis for this contention is that one of the "circumstances" specified in section 1631.7(d) (5) prevented the board from issuing an induction order prior to April 1st-namely, Levine's right of appeal of the board's decision refusing his request for reclassification.[9]
 
 
 14
 Thus whether the issuance of Levine's induction order was blatantly lawless turns on whether the order was issued "as soon as practicable". Whether the order was issued "as soon as practicable" depends on whether Levine did have or did not have a right of appeal from the board's decision as made known to Levine by the March 1st Form 110 that it was continuing Levine in Class I-A. Whether Levine had a right of appeal from this decision in turn depends on whether the board decided not to reopen (no right of appeal) or to reopen and not to reclassify (right of appeal).
 
 
 15
 The difficulty in resolving this last inquiry comes from the fact that a board can reopen a registrant's classification and then place him right back into the same classification.[10] With one relevant exception, such a "reclassification" has all of the appearances and consequences of a refusal to reopen in the first place. The exception is of course that a registrant whose classification has been opened has the right to a personal appearance and/or appeal.[11] A registrant whose classification has not been reopened has no such rights.[12]
 
 
 16
 Both parties rely on circumstantial evidence to prove what in fact the board decided. Levine argues that the December 1970 letters show that the board refused to reopen his classification and that the February 23d hearing was clearly a courtesy hearing from which he could not have had a right of appeal. The government responds by pointing to the March 1st Form 110, which by the relevant regulations is required to be issued upon a reopening[13] and on its face informs the registrant of his rights to a personal appearance and/or an appeal.[14]
 
 
 17
 On the basis of this circumstantial evidence we find ourselves uncertain as to what in fact the board decided as a result of the February 23d meeting. We therefore conclude that a hearing should be held to determine how the board voted in response to Levine's request for a reopening and a reclassification.
 
 
 18
 Regardless of how the board voted it is next necessary to determine whether the April 26th issuance of the induction order was "as soon as practicable" within the meaning of section 1631.7(d) (5). If the board voted to reopen (thus entitling Levine to appeal rights), then it would appear that the issuance was "as soon as practicable".[15] Even if the board voted not to reopen, there may be an explanation for the delay in the issuance of the induction order that would bring the issuance within the proviso of section 1631.7(d) (5). The few cases dealing with the proviso indicate that if a local board has in good faith and with reason failed to comply with the issue and schedule mandate of section 1631.7(d) (5), then its failure will not support the issuance of an injunction.[16] In Lawton v. Tarr,[17] the induction order was issued to the registrant on April 5th for induction on April 21st. After reading section 1631.7(d) (5) as establishing flexible, not rigid guidelines on the power of local boards to issue induction orders beyond April 1st,[18] the Fourth Circuit concluded on the facts that the local board's delay in issuing the induction order, due in part to a security check of the registrant, was not violative of the regulation.
 
 III. Necessity for Remand
 
 19
 Pre-induction review is generally appropriate only where there is "blatantly lawless" conduct on the part of the local board and "there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed [classification] is deserved." Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 416, 21 L.Ed.2d 402 (1968); see Breen v. Selective Service Local Bd. No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); id. at 468-469, 90 S.Ct. 661 (Harlan, J., concurring); Fein v. Selective Service System Local Bd. No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). Those limitations on pre-induction review have been imposed in the context of claims concerning the propriety of a classification assigned to a registrant by his Board because of "the congressional purpose in enacting Section 10(b) (3) to prevent litigious delay in the process of raising an army." Shea v. Mitchell, 137 U.S.App.D.C. 227, 421 F.2d 1162, 1165 (1970). See also Clark v. Gabriel, 393 U.S. 256, 258-259, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).
 
 
 20
 To the extent that Levine asserts that he was unlawfully ordered to induction after his liability as a member of the Extended Priority Selection Group had terminated, this is not a case involving the merits of his claim to an occupational deferment and does not involve board "discretion and judgment in determining facts and in arriving at a classification for the registrant."[19] Therefore, under the Breen,[20] Oestereich,[21] ] and now Fein doctrine dismissal of Levine's complaint outright was improper. Here, Levine's claim rests upon the premise that his liability to induction ended under selective service regulations before his induction order was mailed. Whether or not the board's conduct was "blatantly lawless" in so acting, or whether other circumstances prevented the issuance of the order, can only be determined after the facts relating to the February 23d hearing have been disclosed.
 
 
 21
 We thus reverse the dismissal of the complaint and remand for a hearing to determine the issues articulated in the first paragraph of our opinion.[22]
 
 
 22
 In so doing, we do not mean to intimate that the December 9, 1970, notification by the board to Levine of unchanged classification or the December 15, 1970, separate letter of the board indicate that any reopening occurred, nor do we suggest that the grant of a courtesy hearing in and of itself amounts to a personal appearance. Similarly we do not suggest that the board's omission to send any letter pursuant to 32 C.F.R. Sec. 1625.4 or its subsequent mailing of a new classification card are entitled to any great weight on the principal issue involved.
 
 
 
 [1]
 Levine v. Selective Serv. Local Bd. No. 18, Civil Docket No. B-297 (D.Conn. July 26, 1971)
 
 
 [2]
 Section 10(b) (3) provides, in relevant part:
 No judicial review shall be made of the classification or processing of any registrant by local boards . . . except as a defense to a criminal prosecution instituted under section 12 of this title after the registrant has responded either affirmatively or negatively to an order to report for induction . . . .
 Act Sec. 10(b) (3), 50 U.S.C. App. Sec. 460(b) (3) (1970).
 Plaintiff claims damages of $20,000, thus obviating the necessity of our resolving the as yet unsolved question of how plaintiffs in draft cases meet the jurisdictional amount requirement of 28 U.S.C. Sec. 1331 (1970). See Fein v. Selective Serv. System Local Bd. No. 7, 405 U.S. 365, 377-378, 92 S.Ct. 1062, 1070-1071, 31 L.Ed.2d 298 (1972).
 
 
 [3]
 Plaintiff claims that this advice by the secretary prompted in part his failure to exhaust whatever administrative remedies he might have had left to him. Brief for Appellant at 5. In light of our disposition today, we need not deal with this argument
 
 
 [4]
 32 C.F.R. Sec. 1631.7(b) (2) (1971)
 
 
 [5]
 See 32 C.F.R. Sec. 1631.7(d) (4) (1971)
 
 
 [6]
 The letter of December 15, 1970 advising Levine that the board did not think a personal appearance was necessary but that the board would call him for a hearing in the near future, and the letter of February 10, 1971 requesting Levine to report to the board for the February 23d hearing
 
 
 [7]
 32 C.F.R. Sec. 1631.7(d) (5) (1971)
 
 
 [8]
 The assumption being that if Levine had been placed in a lower priority selection group he would not have been inducted. See 32 C.F.R. Secs. 1631.7(d) (5), 1631.7(b) (1971)
 
 
 [9]
 Any registrant who has been classified anew has 30 days after the date the board mails to the registrant Form 110 to appeal the classification to the state appeal board. 32 C.F.R. Secs. 1625.13, 1626.2(c) (1) (1971)
 
 
 [10]
 32 C.F.R. Sec. 1625.11 (1971). Cf. Mulloy v. United States, 398 U.S. 410, 414-415, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970)
 
 
 [11]
 32 C.F.R. Secs. 1625.13, 1624.1(a), 1626.2 (1971)
 
 
 [12]
 Mulloy v. United States, 398 U.S. 410, 415, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970)
 
 
 [13]
 32 C.F.R. Sec. 1625.12 (1971)
 
 
 [14]
 Selective Serv. System, Form 110, Selective Serv.L.Rep. 2156:8 (1968)
 
 
 [15]
 It should be noted that a board has the power to reopen and to reclassify even in a courtesy hearing. Selective Serv. System, Local Bd. Mem. No. 52(3) (Jan. 14, 1953, as amended, July 27, 1967), Selective Serv.L.Rep. 2177-78 (1968). If the local board reopens and classifies the registrant anew after a courtesy hearing, the registrant obtains "the same procedural rights of personal appearance and appeal . . . as upon an original classification." Id. p 3(b)
 
 
 [16]
 See Lawton v. Tarr, 446 F.2d 787 (4th Cir. 1971); Smith v. Tarr, 444 F.2d 251 (2d Cir. 1971) (per curiam) (issuance March 24th, induction April 15th, delay occasioned by clerical error in marking registrant's random sequence number); Schemanski v. Tarr, 331 F.Supp. 65 (N.D.Ill.1971) (issuance April 5th, induction April 16th, delay occasioned by registrant's representations that he was under charges for a felony)
 
 
 [17]
 446 F.2d 787 (4th Cir. 1971)
 
 
 [18]
 We believe the phrase "inability of the local board to act" should not be restricted to the extraordinary situations that Lawton suggests [resignation of board members or vandalism of board files]. The regulation employs the phrase, along with others, to illustrate the circumstances, some unspecified, which will justify induction after April 1. When a member of the Extended Priority Selection Group has not been inducted during the first quarter of the year because of the "inability of the local board to act," we interpret Sec. 1631.7 to allow induction after April 1 if (a) the local board and the armed forces have proceeded with reasonable dispatch to comply with regulations governing the selection, examination, and induction of registrants, and (b) the registrant was inducted as soon as practicable
 446 F.2d at 789.
 
 
 [19]
 Fein v. Selective Serv. System Local Bd. No. 7, 405 U.S. 365, 375, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). While we profess some difficulty interpreting the holding in Fein in light of the facts in Fein (see id. at 387, 92 S.Ct. 1062 (Marshall, J., dissenting)), because Levine's section 1631.7(d) (5) claim in no way involves board discretion with respect to a deferment or an exemption, we conclude that Fein does not bar pre-induction review of this claim
 Levine also claims that, assuming the board refused to reopen his classification, its refusal to do so in the face of his presentation of a prima facie claim for an occupational deferment was blatantly lawless conduct subject to review even under current 10(b) (3) doctrine. This contention is without merit. Not only are Levine's factual assertions supporting his "prima facie case" for his occupational deferment wholly conclusory, but also his contention flies squarely in the face of Fein's admonition that 10(b) (3) forecloses review where a board uses its discretion and judgment in determining facts and in arriving at a classification for the registrant.
 
 
 [20]
 Breen v. Selective Serv. Local Bd. No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970)
 
 
 [21]
 Oestereich v. Selective Serv. System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968)
 
 
 [22]
 The issues to be determined at the hearing are to be limited to those articulated in paragraph one. Levine cannot present his claim that the prohibition of counsel during the courtesy hearing (see 32 C.F.R. Sec. 1624.1(b) (1971)) violated his fifth or sixth amendment rights. It would be clearly inconsistent with the purpose of section 10(b) (3) to permit those issues to be heard that do not independently clear the hurdle of the section. Prohibition of counsel at selective service proceedings is not blatantly violative of the fifth or sixth amendments. See, e. g., United States v. Kember, 437 F.2d 534, 537 n. 4 (9th Cir.), cert. denied, 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662 (1971); Cassidy v. United States, 428 F.2d 585, 588 (8th Cir. 1970); United States v. Evans, 425 F.2d 302, 304 (9th Cir. 1970), cert. denied, 402 U.S. 987, 91 S.Ct. 1648, 29 L.Ed.2d 153 (1971); Merritt v. United States, 401 F.2d 768, 769 (5th Cir. 1968) (per curiam); United States v. Dicks, 392 F.2d 524, 528 (4th Cir. 1968); Nickerson v. United States, 391 F.2d 760, 762 (10th Cir.), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968); United States v. Sturgis, 342 F.2d 328, 332 (3d Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); Imboden v. United States, 194 F.2d 508, 513 (6th Cir.), cert. denied, 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952); United States v. Hosmer, 310 F.Supp. 1166, 1171 (D.Me.), aff'd, 434 F.2d 209 (1st Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1209, 28 L.Ed.2d 328 (1971); United States v. Mendoza, 295 F.Supp. 673, 683-684 (E.D.N.Y.1969). See Madera v. Board of Educ., 386 F.2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968)