Robert J. STROPLE, Appellant,

v.

LOCAL BOARD NO. 60 and Local Board No. 3, Appellees.

No. 71–1593.

United States Court of Appeals,
Third Circuit.

Argued May 4, 1972.

Decided Aug. 14, 1972.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

Robert Kopp, U. S. Dept. of Justice, Washington, D. C., for appellees.

Before VAN DUSEN, GIBBONS and JAMES ROSEN, Circuit Judges.

OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

This 10(b) (3) [1] case requires us to determine whether the registrant, Robert J. Strople, is entitled to pre-induction judicial review of allegedly erroneous actions taken by his local selective service board or whether he must wait until habeas or criminal proceedings before he may challenge these actions.

These are the facts, as alleged by appellant, Strople: He received a B.S. degree from the Worcester Polytechnic Institute on January 31, 1969. Shortly after his graduation, his local board, which was situated in Maine, withdrew his student deferment (II–S) and reclassified him fit for active duty (I–A).

1. 50 U.S.C. App. § 460(b) (3).

The Gulf and Western Company, with which Strople had obtained employment in Ohio, requested an occupational deferment (II–A) for him. Ohio's Scientific Advisory Committee supported the deferment, but the registrant's local board in Maine denied him the requested II–A status. However, the local board did forward Strople's file to the Ohio State Appeal Board, which overruled the local board and classified Strople II–A until June 1, 1970.

Prior to the expiration of the deferment, the registrant and his employer requested a continuation of the II–A status. The local board once again classified him I–A. Strople, who was working for Gulf and Western in Pennsylvania at the time, appealed to the Pennsylvania State Appeal Board, which restored his II–A status until August, 1971.

On October 19, 1970, Strople's local board suggested that the Maine State Director appeal the classification to the Presidential Appeal Board. This recommendation, which was not made available to the registrant or the company, was followed by the Director. The statement of appeal filed by the Director was not disclosed to Strople. However, on November 3, 1970, he was informed that an appeal was to be taken.[2]

On December 1, 1970, while the appeal was pending, Gulf and Western sent Strople's draft board a letter requesting that he be given an occupational deferment. According to Gulf and Western, Strople was a "key engineer" in developing a new cartridge case manufacturing system for which Gulf and Western had recently been awarded a Defense Department contract.[3] This letter was received by the board on December 5, 1970, but the board decided not to reopen Strople's file. On December 29, 1970, the Maine Director's appeal reached the Presidential Appeal Board, which classified the registrant I–A. Strople was subsequently ordered to report for induction on April 13, 1971. This suit to enjoin his induction was commenced on March 29, and dismissed on May 24, 1971, 330 F.Supp. 187. By an order of the District Court dated June 1, induction was stayed pending our determination on the merits.

On this appeal, Strople argues that the district court's dismissal was improper and this case should be remanded to it for consideration of his claims that (1) "the local board's failure to inform the registrant of the reasons advanced by the local board and the State Director in connection with the appeal to the President * * * deprived the registrant of a fair and meaningful review," (2) the local board's "failure to reopen and consider this letter [was] in violation of Selective Service regulations and the registrant's constitutional rights," and that (3) the Presidential Appeal Board utilized improper procedures in that "insufficient time was given to the registrant's case and * * * the decision was influenced by a résumé * * * adverse to the registrant's interests."[4]

---

2. Strople filed a written request that the basis for the appeal be explained. The local board, in reply, did not reveal the grounds of error it intended to rely upon, but simply quoted Section 1627.1(a) of the Selective Service regulations.

3. The full text of the letter reads as follows:

The Gulf & Western Research and Development Center was recently awarded Contract No. DAAA25–70–C–0581 by the Frankford Arsenal for the design and development of a new generation 5.56mm cartridge case manufacturing system. The value of the contract is $7.5 million.

Mr. Strople is a key engineer in the development program. He is involved in the design and engineering of ammunition case draw presses and the between press transfer system. The prototype of this system is to be completed in November 1971. We believe this program is vital to the preparedness of our country's ammunition production capability.

We would like this information to be placed in his file and considered in the appeal of his 2A classification."

4. Appellant's brief pp. 4, 5.

In response to Strople's complaint, the government filed a F.R.Civ.P., Rule 12(b) (1) motion to dismiss for lack of jurisdiction and a 12(b) (6) motion to dismiss for failure to state a cause of action upon which relief can be granted. Holding that 10(b) (3) deprived it of jurisdiction, the court dismissed the first and third claims of the complaint. The second ground for relief was denied on the basis of 12(b) (6).[5]

■ Initially, we direct our attention to appellant's second and most substantial claim, i. e., that the district court should not have dismissed his contention that his draft board was required to reopen his classification upon its receipt of the Gulf and Western letter. In order to prevail on this claim, the appellant must carry a two-fold burden: first, he must establish that 10(b) (3) does not pose a jurisdictional bar to pre-induction judicial review of his board's allegedly erroneous refusal to reopen his classification; second, he must show that the board's refusal to reopen was, indeed, erroneous.

The present Section 10(b) (3), was enacted as part of the Selective Service Act of 1967. This statute permits pre-induction judicial review of "the classification or processing of any registrant by local boards * * * only when there is no basis in fact for the classification assigned to such registrant." This language, however, is not self-explanatory, so it is necessary to turn to the five Supreme Court decisions interpreting the statute.

The breadth of 10(b) (3) was first articulated by the Supreme Court in Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Oestereich, a divinity student preparing for the ministry, had been classified IV–D in accordance with the dictate of § 6(g) of the Selective Service Act, 50 U.S.C. App. § 456(g).

In order to protest the war in Vietnam, Oestereich turned in his registration certificate. His board declared him delinquent for failure to have his registration certificate in his possession and to provide the board with notice of his local status. Applying the selective service regulation on delinquency then in effect the board reclassified him I–A. An administrative appeal was unsuccessful and Oestereich was ordered to report for induction. Oestereich then sued to enjoin his induction, but the district court held that 10(b) (3) required a dismissal of the complaint and the Court of Appeals agreed.

The Supreme Court found that, despite its literal language, 10(b) (3) did not preclude pre-induction judicial review. The majority relied upon the clash between 10(b) (3) and a statutorily mandated ministerial exemption. In determining whether a claimed exemption is deserved, "there is no exercise of discretion by a Board in evaluating evidence". p. 238, 89 S.Ct. p. 416. Counterpoised against this clear statutory mandate were delinquency regulations which had not been authorized by Congress but were being used to deprive Oestereich of his exemption. It was clear to the court that that exemption must prevail: "when Congress has granted an exemption and a registrant meets its terms and conditions, a Board cannot nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal of the exemption." p. 237, 89 S.Ct. p. 416.

The Court reasoned that the blatant lawlessness of the board's actions opened the door to pre-induction judicial review. "To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to

---

5. The government's motion to dismiss under 12(b) (6) was not supported by any legal argument or authority. Rather, the government focused exclusively on the jurisdictional issue. On this appeal, the government does not even mention 12(b) (6) and relies solely on 12(b) (1).

construe the Act with unnecessary harshness." p. 238, 89 S.Ct. p. 416.

The other Supreme Court case finding pre-induction judicial review to be available was Breen v. Selective Service Local Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). Breen held a II–S deferment until he surrendered his draft card in order to protest the war in Vietnam. His local board thereupon declared him delinquent for failure to have his draft card in his possession, and reclassified him I–A. The district court and the court of appeals denied injunctive relief, but the Supreme Court reversed.

The Court stressed that the regulations which operated to deprive him of his deferment contravened the purpose of the student deferment. Thus, there was a conflict between the statutes' explicit requirement for student deferments and the regulations' deprivation of that deferment for failure to possess a registration certificate. Breen was consequently, an Oestereich case:

> In both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a "clear departure by the Board from its statutory mandate," Oestereich, supra [393 U.S.] at 238 [89 S.Ct. 414, at 416], and in both cases § 10(b) (3) of the Act should not have been construed to require the registrants to submit to induction or risk criminal prosecution to test the legality of the induction order. Breen p. 467–468, 90 S.Ct. p. 666.

At the other end of the spectrum from Oestereich and Breen are Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L. Ed.2d 418 (1968) and Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

Gabriel, decided the same day as Oestereich, involved the reviewability of a selective service board's decision in classifying a registrant. Gabriel, denied CO classification by his local board and by the selective service appeal process, sought pre-induction judicial review of their decisions. His motion for a preliminary injunction was based on the contentions that (1) the I–A classification had no basis in fact, (2) the board has misapplied the statutory definition of conscientious objectors, and (3) the board was biased against CO claimants.

The Supreme Court held that 10(b) (3) barred preinduction judicial review. The opinion of the court distinguished Oestereich as involving a registrant who was "by statute unconditionally entitled to exemption." In Gabriel, in contrast, there was "no doubt of the board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment." Its denial of Gabriel's request resulted from an exercise of "its statutory discretion to pass on a particular request for classification, 'evaluating evidence and * * * determining whether a claimed exemption is deserved.' [citing Oestereich] A Local Board must make such a decision in respect of each of the many classification claims presented to it. To allow pre-induction judicial review of such determinations would be to permit precisely the kind of 'litigious interruptions of procedures to provide necessary military manpower' [cite omitted] which Congress sought to prevent when it enacted 10(b) (3)." 393 U.S. p. 258–259, 89 S.Ct. p. 426.

In a concurring opinion, Mr. Justice Douglas wrote that Gabriel was not entitled to pre-induction review because classification as a conscientious objector "turns on the weight and credibility of the testimony." p. 259, 89 S.Ct. p. 426. In dicta, Justice Douglas noted that Oestereich applies to "the extreme case where the Board can be said to flout the law," e. g., if a board moved a registrant from a CO classification to I–A and, disregarding all the evidence, denied him a CO classification. p. 260, 89 S.Ct. p. 427.

Less than a month after Gabriel, the Court rendered a one sentence per cur-

iam decision in Boyd v. Clark, *supra*, which affirmed the judgment on the basis of Clark v. Gabriel. The registrant plaintiffs in *Boyd* had sued in the district court to challenge the constitutionality of Section 6(h) (1), 50 U.S.C. App. § 456(h) (1), which provided for student deferments. Such deferments allegedly discriminated against those who could not finance a college education and did not bear a reasonable relation to the purpose of the act. The district court dismissed their complaint for injunctive relief and the Supreme Court upheld the dismissal.

The per curiam opinion of the Court in *Gabriel* does provide a good foundation for the holding in *Boyd*. Like *Gabriel* and unlike *Oestereich* and *Breen*, *Boyd* involved a challenge to selective service action made pursuant to regulations both authorized by statute and in accord with the statutory policy. The board was acting with the role assigned to it to classify registrants II–S or I–A and permitting pre-induction judicial review would disrupt these authorized normal functions. Gabriel had claimed that his local board had misapplied the appropriate standards when it had denied him his requested status, whereas Boyd attacked the constitutionality of the classification standards local boards were required to follow. Despite this difference, the *Boyd* court denied jurisdiction solely on the basis of *Gabriel*. Apparently, the court was convinced that the nature of the registrant's challenge had no bearing on the 10(b) (3) jurisdictional question: whether it is a constitutional or factual challenge which is being raised a local board's classification of a registrant is immune from pre-induction judicial review as long as the board is acting within the scope of its statutory authority.

This quartet of Supreme Court cases constituted the definitive law on 10(b) (3) until the court rendered its decision in Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298, (1972). *Fein* had been classified as a conscientious objector by his local board, but the state selective service director believed that *Fein* did not merit the exemption and took an appeal pursuant to 32 CFR § 1626.1. The appeal board and the national board agreed with the director and classified Fein I–A. At that point, with no outstanding induction order, *Fein* filed a suit seeking injunctive and declaratory relief preventing his induction into military service. His complaint, which alleged that he had been denied due process of law by selective service statutes and regulations governing the classification and appeal process, asserted that he was constitutionally entitled to (1) a statement of reasons for the State Director's decision to appeal and for the appeal board's denial of a I–O classification, and (2) the opportunity to rebut the Director's decision to appeal by, among other things submitting additional material for consideration by the Appeals Board.

The threshold issue was whether these claims were cognizable in a pre-induction suit. The Supreme court reached back to the 10(b) (3) quartet for guidance in answering this question and read the cases as establishing these two principles:

"(a) that § 10(b) (3) does not foreclose pre-induction judicial review in that rather rare instance [such as *Oestereich* and *Breen*] where administrative action, based on reasons unrelated to the merits of the claim to exemption or deferment, deprives the registrant of the classification to which, otherwise and concededly, he is entitled by statute, and (b) that § 10(b) (3) does foreclose pre-induction judicial review in the more common situation [such as *Gabriel* and *Boyd*] where the board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification for the registrant," p. 374, 92 S.Ct. p. 1069.

After examining the facts the Court concluded that *Fein* was a (b) case. Fein's denial of CO status and his I–A classification was a product of the "sys-

tem of classification." turning "on the weight and credibility of the testimony." "[I]t was 'dependent upon an act of judgment by the Board.' *Gabriel*, 393 U.S., at 258, [89 S.Ct. 424, at 426]." Fein, p. 376, 92 S.Ct. p. 1070.

*Fein* challenged "the constitutionality of the very administrative procedures by which, he claims, the presentation of his case was adversely affected." p. 375, 92 S.Ct. p. 1070. The court briefly considered this claim and concluded that a registrant cannot circumvent 10(b) (3) merely by raising the specter of a due process denial.[6] It also rejected the argument that the local board's granting of a CO status could not be appealed by the State Director, holding that the pertinent statute did not "nullify the regulations' express grant of appellate power to the state director." p. 377, 92 S.Ct. p. 1070. *Fein* thus reaffirmed the *Gabriel* holding that a regulation which does not contravene its statutory basis cannot be challenged through pre-induction suits.

The four pre-*Fein* Supreme Court cases were evenly divided between the (a) and (b) categories. *Fein* made clear, however, that this equal division was mere happenstance. (A) cases, it stressed, were "rather rare instance[s]," restricted to those infrequent situations where the local board has based its classification "on reasons unrelated to the merits of the claim" and the meritoriousness of the registrant's claimed classification was "factually conceded and thus * * * assured by the statute upon objective criteria." The (a) cases, then, consist of those exceptional situations where the board has been misled by consideration of "extraneous circumstances" and it is demonstrated to a reviewing court that the registrant is, with "objective cer-

tainty," entitled to the status his board has denied him. p. 374, 92 S.Ct. p. 1069.

The (b) category encompasses a "more common situation," where the board action was not controlled by "extraneous" considerations and "objective certainty of status is lacking." The classification by the local board "turned 'on the weight and credibility of the testimony,' as Mr. Justice Douglas noted in his concurrence in *Gabriel*, 393 U.S., at 259 [89 S.Ct. 424, at 426, 21 L.Ed.2d 418]. And it was 'dependent upon an act of judgment by the board.' *Gabriel*, 393 U.S., at 258 [89 S.Ct. 424, at 426]." *Fein* p. 376, 92 S.Ct. p. 1070. Most challenges to draft board actions are (b) cases.

Like Fein, Strople falls well within the broad ambit of (b) cases. The status Strople hoped to achieve as a result of reopening was a II–A occupational deferment. Unlike Oestereich and Breen, his right to this classification was not "conceded by the government" or, in any way, "assured upon objective criteria." In fact, prior to requesting a reopening, Strople had had his claim to a II–A status considered and rejected by the National Appeals Board. He alleges that changed circumstances have now made him eligible for a II–A deferment, but there is, to say the least, no assurance "upon objective criteria" that he is statutorily entitled to the deferment he seeks.

*Oestereich* and *Breen* permit pre-induction review only where the registrant's claimed *status* is established with "objective certainty." However, even if we assume that the (a) category of cases can be stretched to embrace conceded deprivations of *procedural rights* (i. e., the right to a reopening), Strople still falls outside the pre-induction review area.

6. The court thus made explicit what we inferred to be the holding in *Boyd*. Note that the Court did not have to reach this constitutional issue because *Fein* could not claim that he had been harmed by any of the alleged procedural defects. As

the Court explained at great length in Part 4 of its opinion, Fein's local board would have to extend to him the procedural guarantees which came into effect as the result of new regulations formulated in 1971 and 1972.

Mulloy v. United States, 398 U.S. 410, 418, 90 S.Ct. 1766, 1772, 26 L.Ed.2d 362 (1969) requires a local board to reopen if a registrant has "presented a nonfrivolous, prima facie claim for a change in classification based on new factual allegations which were not conclusively refuted by other information in his file." The requirements of a *prima facie* case for an occupational deferment are set forth in 32 C.F.R. 1622.22(a) and 1622.-23(a).[7] The local board apparently concluded that these standards had not been satisfied and that, therefore, no *Mulloy* reopening was mandated.

■ Strople now attempts to obtain pre-induction review of the board's refusal to reopen, but his right to a reopening is not factually "conceded." Nor is it established by "objective criteria." Furthermore, there is no claim that the reopening was denied for "reasons unrelated to the merits of the claim." In short, the board's denial does not represent the "blatantly lawless" action which is a prerequisite to pre-induction judicial review. *Oestereich*, 393 U.S. p. 238, 89 S.Ct. 414. The decision not to reopen therefore falls within the broad expanse of the (b) category: "[T]he board, authoritatively, has used its discretion and judgment in determining facts and in arriving at a classification" and Strople, like Gabriel, is not entitled to pre-induction review of its decision. Manes v. Local Board No. 36, 459 F.2d 1112 (3d Cir. 1972); See also Levine v. Selective Service Local Board No. 18, 458 F.2d 1281 (2d Cir. 1972); McCarthy v. Director of Selective Service System, 460 F.2d 1089, p. 1091 (7th Cir. 1972). Strople, of course, remains free to challenge the board's refusal to reopen in future habeas or criminal proceedings.

In view of our holding that 10(b) (3) forecloses preinduction review of alleged *Mulloy* violations, we have no reason to determine whether Gulf and Western's letter to Strople's board did actually present a prima facie case requiring the board to reopen.

■ Two minor points remain for our disposition. These are the claims that Strople was constitutionally entitled to (1) the reasons advanced by the local board for taking an appeal to the President and (2) the opportunity to present additional information to the Presidential Appeal Board. As suggested by *Boyd*, and made explicit by *Fein*, constitutional challenges to Selective Service Board action pursuant to its regulations and statutes are not cognizable prior to induction.

The district court's dismissal of the complaint will be affirmed and the stay entered by that court vacated.

GIBBONS, Circuit Judge (dissenting).

Once again we are confronted with the task of attempting to draw a rational line between those cases in which pre-induction judicial review is permitted, and perhaps even constitutionally required on the one hand, and those in which the Article III Courts must acknowledge that an enactment of Congress has deprived them of jurisdiction. Where that line will be drawn by a given federal judge or court often will reflect his or its basic attitude about constitutional issues which are as old as Cary v. Curtis, 44 U.S. (3 How.) 235, 11 L.Ed. 576 (1845) and Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868). Since I perceive it to be the highest duty of the Article III Courts to guard jealously their power to adjudicate claims of due process violation, I would give to Section 10(b) (3) of the Selective Service Act, 50 U.S.C. App. § 460(b) (3), the narrowest possible reading consistent with its text and with the decisions of the Supreme Court construing it. The issues involved in construing a statute which attempts to limit the power of the Article III Courts to grant judicial review are always dif-

---

7. Strople does not argue that these occupational deferment regulations contravene 50 U.S.C. § 456(h) (2), their statutory basis. Cf. *Oestereich* and *Breen*.

ficult. The difficulties presented by Section 10(b) (3) are reflected in the collection of per curiam and signed opinions of the Supreme Court to which the majority opinion refers, and in one other per curiam decision of that Court to which the majority opinion does not address itself. That decision is Morgan v. Melchar, 405 U.S. 1014, 92 S.Ct. 1280, 31 L.Ed.2d 477 (1972) which vacates and remands to this court our own judgment in Morgan v. Melchar, 442 F.2d 1082 (3d Cir. 1971).

I do not agree that Fein v. Selective Service System, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972) is dispositive of this case. The Supreme Court could not have believed that *Fein* was dispositive of the issue presented in this case, for if it so believed it must of necessity have affirmed our judgment in *Morgan.*

Like this case, Morgan v. Melchar came before us on an appeal from an order granting a motion pursuant to Fed. R.Civ.P. 12(b). Thus both cases properly involve pleadings issues only, not the underlying merits of the claim for deferment or exemption. When Morgan v. Melchar was before us the majority opinion chose to disregard the fact that the case was before us solely on the pleadings and as an alternative ground for decision to look into the merits of Morgan's claim. I considered that action usurpation by an appellate court both of the functions of the district court and of the function of the Selective Service System, 442 F.2d at 1090 (dissenting). *Morgan* also presented however, the precise pleading issue to which the majority opinion addresses itself.

That issue is the legal sufficiency of a complaint seeking pre-induction review which alleges that in violation of 32 C. F.R. § 1625.2 a local board, to which new information has been presented, which prima facie entitles a registrant to a reclassification, cast its decision as a refusal to reopen, and thereby deprived the registrant of the appeal

rights to which he would otherwise have been entitled under 32 C.F.R. § 1625.13.

There is no question that these allegations set forth a claim that a local board acted illegally, not merely erroneously. Mulloy v. United States, 398 U.S. 410, 416–418, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970).

"Because of the narrowly limited scope of judicial review available to a registrant, the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System. Where a prima facie case for reclassification has been made, a board cannot deprive the registrant of such review by simply refusing to reopen his file. Yet here the board did precisely that. . . .

"This is not to say that on all the facts presented to it the board might not have been justified in refusing to grant the petitioner a I–O classification; it is to say that such refusal could properly occur only after his classification had first been reopened. The board could not deprive the petitioner of the procedural protections attending reopening by making an evaluative determination of his claim while purportedly declining to reopen his classification."

In *Fein* the Court did not deal with a *Mulloy* issue. It dealt not with a *procedural* irregularity but with an allegedly erroneous substantive decision in the Selective Service administrative process. Fein was afforded all the hearing and appeal rights which are set out in the statute and regulations. It seems clear to me, from the absence of any reference to Mulloy v. United States in the *Fein* opinion, and from the virtually simultaneous per curiam reversal and remand in Morgan v. Melchar, that the Supreme Court has consciously and deliberately refrained from announcing its final position on whether or not pre-induction judicial review is available in a case where the Selective Service System deprives a registrant of an administrative procedural right.

The government at the oral argument on this case advanced the contention that the Court intended no more by the Morgan v. Melchar vacation and remand than that this court, rather than it, enter an order affirming the dismissal of the complaint on the basis of the *Fein* opinion. I cannot believe that the Supreme Court would act so purposelessly. If the *Mulloy* issue was in its view controlled by *Fein,* the per curiam order would have been an affirmance, for no other order would have made any sense. The remand in Morgan v. Melchar is an indication to this court that the pleading issue which that case presents is to receive our judicial consideration. If the issue were already foreclosed there would be nothing of a judicial nature left for us to act upon.

The majority opinion refers to the language in the *Fein* opinion which sets up a dichotomy between the (a) category of cases, in which entitlement to a classification is objectively certain, and the Selective Service System made a decision for reasons unrelated to the merits, and the (b) category, in which the objective certainty is lacking. 405 U.S. at 374–375, 92 S.Ct. 1062. It reads these categories as all encompassing. But the language is taken out of context, for the categories refer to decisions within the administrative process made in accordance with the specified procedures. *Fein* simply does not deal with deprivations of administrative procedural rights.

But even if Justice Blackmun did intend to encompass both erroneous decisions and procedural irregularities within the dichotomy which he set up in the *Fein* opinion, appellant's allegations meet his test. He alleges that he presented new information which required the board to reopen and that the board, by improperly refusing to reopen, deprived him of administrative appeal rights. The existence of the appeal rights of which he claims to have been deprived is as objectively certain as any

may be. Mulloy v. United States. The deprivation of these rights, if he was entitled to them, was as blatantly lawless as any of the deprivations of rights to which Justice Blackmun referred as falling within his category (a).

The majority opinion attempts to place the *Mulloy* type violation in Justice Blackmun's category (b) on the ground that the appellant's right to a reopening is not factually "conceded." 466 F.2d at 607. The simple answer to such an attempt is that on the record before us the appellant's right to a reopening is factually conceded. The case is before us solely on the complaint and the government's motion pursuant to Fed.R. Civ.P. 12(b). The allegations of the complaint track the *Mulloy* decision. Appellant alleges that his employer has presented to the board information not previously considered which, if true, would be sufficient under the regulations to warrant granting the requested reclassification, but that the board refused to reopen. For purposes of the Rule 12(b) (1) motion the truth of these allegations must be deemed to be conceded. That being the case it is conceded for purposes of this appeal that the appellant has been wrongfully deprived of the appeal rights mandated by the statute, 50 U.S.C. App. § 10(b) (3), the regulations, 32 C.F.R. § 1625.13, and the case law, Mulloy v. United States.

The majority opinion holds that such lawlessness by the Selective Service System is beyond the reach of pre-induction judicial review. That holding is contrary to the judgment, at least, of this court in Hunt v. Local Board No. 197, 438 F.2d at 1128 (3d Cir. 1971). The difficulty of the issue presented by a deprivation of an administrative procedural right in a pre-induction situation is well illustrated by the fact that there is no opinion of the court in the *Hunt* case on which a majority agreed. Thus I do not contend that *Hunt* controls the result here. But I continue to adhere to

the interpretation of § 10(b) (3) which I set forth in that case:

"It seems to me that the correct interpretation of 50 U.S.C. App. § 460(b) is this:

(1) The power of a Local Board to decide whether a change in circumstances entitled a registrant to a new classification is subject to administrative appeal whenever a *prima facie* claim is presented.

(2) The refusal of a Local Board to reopen when presented with such a *prima facie* claim is an abuse of discretion subject to judicial review. Mulloy v. United States, *supra,* and cases therein cited.

(3) Such an abuse of discretion is a clear legal error and judicial review of that legal error is available not only in post-induction habeas corpus and criminal cases but also in pre-induction mandamus or injunction cases. Oestereich v. Selective Service Bd., *supra*; Breen v. Selective Service Bd., *supra.*" 438 F.2d at 1136.

Moreover the majority opinion nowhere comes to grips with the distinction drawn by Judge Hastie in *Hunt* between injunctive actions seeking to review Selective Service Systems decisions and actions in the nature of mandamus under 28 U.S.C. § 1361 to compel that agency to perform a mandatory duty. The *Fein* case was, of course, an injunction action seeking to review a decision made in accordance with the applicable regulations. It did not pose the problem of the interrelationships between 28 U. S.C. § 1361 and § 10(b) (3), 50 U.S.C. App. § 460(b). Even supposing that the interpretation of § 10(b) (3) which I urged in *Hunt* is precluded by the *Fein* decision, there remains the question whether, properly interpreted, that section was intended to limit the mandamus jurisdiction of the federal courts.

The significance of the distinction between an action to compel an administrative agency to follow its own rules and an action to review a decision made in accordance with those rules becomes apparent in the colloquy between the court and the attorney for the government in the oral argument of this case. In response to the question whether § 10(b) (3), as interpreted in *Fein,* prohibited pre-induction judicial relief from an order to report for induction issued by a local board which had never actually met to consider the registrant's classification, government counsel answered affirmatively. The government's position is that every disregard of administrative due process is entirely beyond the reach of any court except as a defense to a criminal prosecution for failure to report for induction or in post-induction habeas corpus. Originally, of course, Congress proposed that there be no review of a Selective Service System classification whatsoever. Act of Sept. 16, 1940, ch. 720, 54 Stat. 885. This attempt to insulate the draft from the due process clause of the Fifth Amendment was more than the Supreme Court could permit. In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), it held that post-induction habeas corpus relief remained available, and in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), it held that illegality of a classification was a defense to a criminal prosecution. Congress backed down, at least to the extent of acknowledging the availability of *Estep* type review in the defense to a criminal case. Act of June 30, 1967, Pub. L. No. 90–40, § 8, 81 Stat. 100. It still has not in as many words amended the statute to acknowledge the availability of *Falbo* type habeas corpus relief, although the government acknowledges that such relief is constitutionally required. In Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1960) and Breen v. Selective Service System, 396 U.S. 461, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), the Supreme Court, as it had earlier in *Fal-*

*bo* and *Estep*, balked at the notion that Congress could insulate blatantly lawless administrative conduct from judicial review until after a registrant submitted to induction or indictment. It avoided a serious problem of unconstitutionality by construing § 10(b) (3) to permit pre-induction judicial review in those cases.

I can think of few more blatantly lawless administrative actions than to deliberately frame a decision on a claim in the guise of a refusal to reopen so as to deprive one registrant of appeal rights which are available to other registrants. If § 10(b) (3) prohibits the federal courts from preventing the execution of orders resulting from such blatantly discriminatory lawlessness while the same statute imposes on the courts a duty of providing a criminal enforcement mechanism then the statute reaches, for me at least, the point beyond which Congress may not push the *Ex Parte McCardle* principle. *See* Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362, 1379 (1953).

I suspect that considerations such as these prompted the Court to remand Morgan v. Melchar so that we could in a pre-induction case involving a *Mulloy* claim, free from an improper excursion into original fact finding rather than appellate review, present the views of this court as to the proper construction of § 10(b) (3) in the light of *Mulloy*. That suspicion is reenforced when I see in the *Mulloy* opinion an approving reference to Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956). 398 U.S. at 415 n. 3, 90 S.Ct. 1766, 26 L.Ed.2d 362. *Townsend* granted pre-induction relief in a case involving failure to reopen. I do not believe that the *Fein* decision intended to overrule, without any reference to it, Justice (then Judge) Stewart's own opinion as a circuit judge in that case.

I would reverse.